IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELIZABETH LAIRD GAREY-JONES,

    Plaintiff,

v.                                      CV 14-199 JCH/WPL

LES LOUISIANA ENERGY SERVICES,
LLC, d/b/a URENCO USA,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Louisiana Energy Services, LLC ("LES") enriches uranium at its facility east of Eunice, New Mexico, to provide fuel for nuclear power utilities. Elizabeth Garey-Jones worked for LES as a Procurement Specialist II from 2009 until she resigned on December 8, 2012. Garey-Jones has filed suit pro se, asserting claims for Title VII sex discrimination, a violation of the Equal Pay Act, and disability discrimination under the Americans with Disabilities Act ("ADA"). LES has filed a motion for summary judgment on all claims. (Doc. 42.) I have considered the arguments raised by the parties, and I recommend that LES's motion be granted in part and denied in part.

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering LES's motion for summary judgment, I will view the evidence and draw all reasonable inferences in the light most favorable to Garey-Jones, the party opposing the motion. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). To establish a genuine issue of material fact, a plaintiff must "go beyond the pleadings and designate specific facts so as to make

a showing sufficient to establish the existence of an element essential to that party's case." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted). Unsubstantiated allegations, or mere assertions or conjecture as to factual disputes, are not enough for a party to survive summary judgment. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988).

Because Garey-Jones proceeds pro se, I will review her pleadings liberally and under a less stringent standard than applied to pleadings drafted by an attorney. *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006). However, I may not act as the advocate for a pro se party. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Further, a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

LES broke ground to begin construction of its facility in August of 2006. *About Us*, URENCO, http://www.urenco.com/about-us/ (last visited Nov. 21, 2014). LES uses centrifuge technology to enrich uranium, which it provides to nuclear power utilities for use in generating electricity for consumers. LES began the process of enriching uranium in June of 2010, and at the end of December 2013 had a capacity of 3,200 metric tons of separative work per year. *Id*. LES will continue construction on the plant until it reaches its planned maximum capacity of 5,700 metric tons of separative work per year. *Id*.

The LES Procurement Department is divided into two divisions, Projects and Operations. (Doc. 43 Ex. D.)[1] Garey-Jones, a Procurement Specialist II, worked in the Projects division, which handles projects for both core proprietary technology—the centrifuges and systems needed to enrich uranium—and non-core technology. (Doc. 42 Ex. 2 ¶ 3.) The Projects division

---

[1] When evaluating a motion for summary judgment, a court may consider all materials in the record. FED. R. CIV. P. 56(c)(3).

also handles contracts for construction projects at the plant. (Doc. 43 Ex. D.) The Operations division handles facilities maintenance and operations. (Doc. 43 at 6.)

Garey-Jones brings two Title VII sex discrimination claims against LES. First, she alleges that LES failed to promote her to Procurement Manager, Employment Relations Manager, or Senior Procurement Specialist or to the team lead position that Paul Newey received. Second, she asserts a salary discrimination claim, alleging that she was not paid equally to male LES employees who performed similar work. Garey-Jones has also brought a salary discrimination claim against LES under the Equal Pay Act.

In addition, Garey-Jones has brought a claim under the Americans with Disabilities Act, claiming that LES discriminated against her because it perceived her to be disabled. In May 2012, Garey-Jones was diagnosed with Parkinson's Disease. In August 2012, she notified Ken Templeton, the Procurement Director, of her diagnosis, and Garey-Jones claims that Templeton almost immediately began reassigning her substantive duties and made her a rover to assist other procurement specialists with their work because he perceived her as disabled.

### FAILURE TO PROMOTE CLAIMS

Unlawful employment discrimination because of an individual's sex is prohibited by Title VII of the Civil Rights Act. 42 U.S.C. § 2000e-2(a) (2012). Because Garey-Jones has not offered direct evidence of discrimination, her claims under Title VII are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). To state a prima facie case for failure to promote, Garey-Jones must demonstrate by a preponderance of the evidence "that (1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; [and] (3) she 'was rejected under circumstances which give rise to an inference of unlawful

3

Case 2:14-cv-00199-JCH-WPL   Document 46   Filed 12/01/14   Page 4 of 17

discrimination.'"[2] *Tabor*, 703 F.3d at 1216 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If Garey-Jones states a prima facie case, the burden shifts to LES to offer a legitimate, non-discriminatory purpose for the failure to promote. (*Id.* at 1216-17.) If LES makes this offer, Garey-Jones will avoid summary judgment only if she shows that her sex was a determinative factor in the failure to promote, or shows that LES's explanation for its action was merely pretext. (*Id.* at 1217.)

Garey-Jones claimed in her Complaint that she applied for the positions of Procurement Manager and Employee Relations Manager and was denied these promotions on the basis of her sex. (Doc. 1 at 7.) However, Garey-Jones subsequently conceded that she was not qualified to be Procurement Manager and did not meet the minimum qualifications for Employee Relations Manager. (Doc. 42 ¶¶ 6-8; Doc. 43 ¶¶ 6-8.) Further, the Employee Relations Manager position was filled by a woman, and this circumstance does not give rise to an inference of unlawful discrimination. (Doc. 42 ¶ 8; Doc. 43 ¶ 8.) Garey-Jones has failed to make a prima facie case for failure to promote to these positions.

Garey-Jones also claims that she should have been promoted to one of the Senior Procurement Specialist positions that were filled by Daniel Schlueter, Jim Johns, Jim Soyars and John Cassata.[3] When she learned that Daniel Schlueter and Jim Johns held limited term positions, Garey-Jones admitted that she did not want a limited term position, but she argued that

---

[2] LES proposes that this claim be evaluated under a four-part test, but the Tenth Circuit prefers the three-part test set out above. *Tabor*, 703 F.3d at 1216, n.4.

[3] The parties do not address whether LES used formal or informal hiring procedures for these positions or the team lead position or whether Garey-Jones applied for any of them. *See Bennett v. Quark*, 258 F.3d 1220, 1228 (10th Cir. 2001) (stating that, depending on whether formal or informal hiring procedures were used, a plaintiff must show that she applied for or at least sought the position at issue, or was "in the group of people who might reasonably be interested in the particular job," respectively) (quotation omitted), *overruled on other grounds by Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137 (10th Cir. 2003).

she should have been paid equally to Schlueter and Johns.[4] (Doc. 42 ¶ 3; Doc. 43 ¶ 3.) Jim Soyars was hired to develop and construct the commons building, an environmentally low-impact building. (Doc. 42 ¶ 4.) Garey-Jones does not dispute that Soyars was hired based on his certification in Leadership in Energy and Environmental Design ("LEEDS") buildings. (*Id.*; Doc. 43 ¶ 4.) Garey-Jones admits that she has no background in LEEDS buildings (Doc. 42 Ex. 1 at 6), so she has failed to prove that she was qualified for this position. *Tabor*, 703 F.3d at 1226-27. Garey-Jones also admits that she did not want Jim Soyars's position because it ended when his project was cancelled.[5] (Doc. 42 ¶ 4; Doc. 43 ¶ 4.) LES is entitled to summary judgment on Garey-Jones's claims that she should have been promoted to the Senior Procurement Specialist positions that were filled by Schlueter, Johns and Soyars.

In 2012 John Cassata was a Senior Procurement Engineering Specialist with expertise in the management of large turnkey engineering/procurement/construction ("EPC") and general constructor ("GC") contracts. (Doc. 42 ¶ 5; Doc. 43 ¶ 5.) Cassata has responsibility for LES's Phase III construction project. (Doc. 42 Ex. 2 ¶ 8.) Garey-Jones does not contest that expertise in EPC and GC contracts was a qualification for Cassata's position. (Doc. 42 ¶ 5; Doc. 43 ¶ 5.) Garey-Jones admits that she had no experience in turnkey EPC construction projects (Doc. 42 Ex. 1 at 6), and her personal belief that she could have done Cassata's job is insufficient to preclude the entry of summary judgment on this issue. *Stover*, 382 F.3d at 1073.

Garey-Jones's final failure to promote claim is that she should have been promoted to team lead instead of Paul Newey when the Procurement Department was reorganized in the fall of 2012. There are two problems with this claim. First, Garey-Jones admitted that team lead is

---

[4] Garey-Jones's arguments for salary discrimination will be addressed subsequently.
[5] A court may grant summary judgment when a party fails to properly contest material facts asserted by the movant. *Hutchins v. Cessna Aircraft Co.*, No. 14-3014, 2014 WL 5472172 (10th Cir. Oct. 30, 2014) (unpublished).

not an actual job position and does not appear on LES's organizational chart. (Doc. 42 Ex. 1 at 8; Doc. 43 Ex. D.) Team lead is a designation given to a Procurement Specialist II who is primarily responsible for a particular contract or set of services. (Doc. 42 Ex. 2 ¶ 5.)  Garey-Jones is well aware of this, because she served as the team lead on some of the core installation contracts. (Doc. 42 Ex. 1 at 1.) Ken Templeton stated that no one was promoted during the reorganization, and all of the Procurement Specialist IIs kept the same pay, job titles and levels of responsibility. (Doc. 42 ¶ 13.) Although Garey-Jones claims that Newey received a pay raise as a team lead several months after the promotion, she admitted that this assertion is based on hearsay. (Doc. 42 Ex. 1 at 9.)

Second, assuming that the position of team lead would be a promotion, LES has offered a legitimate, non-discriminatory reason for its decision. In an effort to balance workloads in the department and prepare for the Phase III construction project, Templeton reorganized the Procurement Department. When Steve Phelps, the Procurement Manager, resigned, his position was eliminated for efficiency reasons, and Templeton absorbed those duties. (Doc. 42 Ex. 2 ¶ 2.) Templeton designated Newey to be a team lead because of his experience with core equipment and his experience working with the European suppliers. (*Id.* ¶ 5.) Templeton also designated two other women, Laura Tate and Melissa Pettigrew, to be team leads on other projects. (*Id.*) Templeton assigned Garey-Jones to assist others in closing out the procurement contracts relating to the Cylinder Recovery and Dispatch Building, which was winding down. (*Id.*)

Thus, the burden shifts to Garey-Jones to demonstrate that LES's asserted reason "was not the true reason for the employment decision." *Tabor*, 703 F.3d at 1218 (quoting *Burdine*, 450 U.S. at 256). Garey-Jones can show pretext by showing that the proffered reason is factually false, or by showing that discrimination was a primary factor in LES's decision, which is often

6

accomplished by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in LES's proffered reason, such that a reasonable fact finder would deem the reason "unworthy of credence." *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)).

To establish pretext, Garey-Jones claims that Newey had less procurement experience than she did, and that both her quality of work and quantity of work at LES exceeded his. (Doc. 43 ¶ 9.) To support this argument, Garey-Jones attached Exhibits A-H to her Response. LES objects to Exhibits A, B, F, G and H, arguing that I should not consider them when ruling on LES's motion because they are not admissible for various reasons. It is well-settled that courts may only consider uncontested facts and admissible material when ruling on a motion for summary judgment. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (citations omitted). While the form of the evidence need not be admissible at trial, "the content or substance of the evidence must be admissible." *Id.* (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)). Federal Rule of Civil Procedure 56 was revised in 2010 and a new subdivision (c) was added, which establishes procedures for supporting and contesting factual positions in summary judgment proceedings. Fed. R. Civ. P. 56(c) advisory committee's note (2010 Amendments). When a party objects that material cited to dispute a fact cannot be presented in a form that would be admissible in evidence, the burden shifts to the proponent "to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 Amendments). The difficulty is that LES raised this issue in its Reply, which has not allowed Garey-Jones an opportunity to show that the

exhibits are admissible as presented or to explain the admissible form that is anticipated.[6] Thus, I will consider Garey-Jones's exhibits in determining whether she has shown that LES's reasons are pretextual.

When evaluating pretext, the relevant inquiry is not whether the employer's reasons were "wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Stover*, 382 F.3d at 1076 (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1990)). Further, the court's "role is not to second guess an employer's business judgment." *Id*. (citation omitted). LES proffered that it was reorganizing the Procurement Department to prepare for the Phase III construction project, and explained how the job duties changed for several employees, not just Newey, during the reorganization. Further, as part of the reorganization, two women were designated to be team leads. Garey-Jones fails to show that this reason is pretextual. Garey-Jones's claims that Newey was inexperienced in the procurement area and that her quality and quantity of work exceeded his is insufficient to demonstrate that this proffered reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reason[] [was] unworthy of belief." *Id*. (citation omitted). Thus, Garey-Jones has not met her burden of establishing pretext, and summary judgment is appropriate on this issue.

## SALARY DISCRIMINATION CLAIMS

Garey-Jones brought claims for salary discrimination under both Title VII and the Equal Pay Act. LES makes only a brief argument in support of its motion for summary judgment on Garey-Jones's claims under Title VII.[7] LES asserts that the 2011 and 2012 salaries for the

---

[6] A court may not rely upon new arguments in a reply unless it permits the nonmovant to respond. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006).

[7] LES devotes two paragraphs in its Motion and one paragraph in its Reply to this argument. (Doc. 42 at 10-11; Doc. 44 at 7.)

Procurement Specialist IIs were set by Ron Rosenberry and John Wisnewski, and that Garey-Jones has no evidence that they were biased against women when they set the salaries. LES also asserts that the highest paid Procurement Specialist II was a woman, Laura Tate. According to LES, these facts compel summary judgment in its favor on this issue.

LES fails to address the burden-shifting framework that applies to salary discrimination claims under Title VII when the evidence of discrimination is circumstantial. *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 636 (10th Cir. 2012). Garey-Jones establishes a prima facie case of salary discrimination under Title VII by showing that she occupied a job similar to that of higher paid male employees. *Id.*; *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). If Garey-Jones establishes a prima facie case, LES must articulate a legitimate, non-discriminatory reason for the salary disparity. *Daniels*, 701 F.3d at 636; *Sprague*, 129 F.3d at 1363 (citation omitted). Once LES advances non-gender based reasons, Garey-Jones must show that LES intentionally discriminated against her—that "a discriminatory reason more likely than not motivated [LES] to pay her less" than similarly situated males. *Sprague*, 129 F.3d at 1363 (quotation omitted).

Garey-Jones claims that she occupied a job similar to Cassata, Soyars, Schlueter and Johns, who earned $114,000 per year, and Newey, who earned $81,000 per year, while she earned only $72,000 per year. (Doc. 43 Ex. A.) LES never addresses these allegations. LES instead jumps directly to the third step of the analysis and argues that Garey-Jones has no evidence that LES intentionally paid her less than her similarly situated male colleagues based on her sex. However, LES does not contend that Garey-Jones failed to make a prima facie case. Thus, the burden is on LES to establish a legitimate, non-discriminatory reason for the salary disparity, and LES has not met this burden because LES has failed to give any reason for the

9

salary disparity. Simply asserting that Rosenberry and Wisnewski set the salaries for 2011 and 2012 fails to establish the reasons why they set the salaries as they did. They may have set them based on seniority or on merit or based on some combination of factors relevant to LES's business, but I cannot speculate on the possible reasons. Because LES has failed to offer any reason for the disparity in salaries, it has not offered non-gender reasons. Thus, the burden has not shifted to Garey-Jones to prove that LES intentionally discriminated against her when it set her salary, and summary judgment is not appropriate on this claim.

Garey-Jones also brought a claim for salary discrimination against LES under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1). Claims for salary discrimination under the EPA do not follow the burden-shifting framework mandated for claims under Title VII. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). Instead, claims under the EPA proceed in two steps. *Id*. First, a plaintiff must establish a prima facie case of salary discrimination. *Id*. To establish a prima facie case under the EPA, Garey-Jones must prove that: (1) she was performing work which was substantially equal to that of the male employees at LES considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under such circumstances. *Id.* at 1311 n.5. If Garey-Jones makes a prima facie case, the burden of persuasion shifts to LES to prove that the salary disparity was based on: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than sex. *Id*. at 1311 (citation omitted). If Garey-Jones establishes a prima facie case, LES is entitled to summary judgment only if it can "prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" *Id*. (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).

Courts do not construe the "equal work" requirement of the EPA broadly, and the jobs must be substantially equal in terms of skill, effort, responsibility and working conditions. *Sprague*, 129 F.3d at 1364. An employer does not violate the EPA if it fails to furnish equal pay for "comparable work" or "like jobs." *Id*.

Garey-Jones contends that she did the same work as Senior Procurement Specialists Daniel Schlueter, Jim Johns, Jim Soyars and John Cassata and should have been paid equivalently to them. Neither party provided a job description for either the Procurement Specialist II or Senior Procurement Specialist positions. However, as noted above, Garey-Jones does not have the certification in LEEDS that was required for the position held by Soyars, and also does not have experience in EPC and GC contracts, essential qualifications for Cassata's position. Garey-Jones has failed to make a prima facie case that she performed work that was substantially similar to work performed by Soyars or Cassata, and LES is entitled to summary judgment on these claims.

The situation is different for the Senior Procurement Specialist positions held by Schlueter and Johns. Although LES contends that Garey-Jones admitted that the job duties for a Senior Procurement Specialist were different than the job duties for a Procurement Specialist II, Garey-Jones testified that she ended up doing the work of a Senior Procurement Specialist and was paid less than the males who held that job. The relevant inquiry should not be confined to a comparison of job titles but should examine the actual job duties performed by each individual. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1239 (10th Cir. 2002). Other than noting that Schlueter and Johns held limited term positions with LES, LES fails to describe how their job duties were different from those performed by Garey-Jones. LES has failed to establish that it is entitled to summary judgment on these claims.

LES spends most of its argument distinguishing the duties of Paul Newey from those performed by Garey-Jones. LES claims that: 1) because Newey was responsible for negotiating and administering contracts to install and support LES's core technology, he was responsible for having a better understanding of the engineering nuances of the uranium enrichment process, including the order of installation and the interdependency of and relationships between the core equipment; 2) Newey negotiated and administered international material and service agreements with entities in the Netherlands, Germany and England, traveled to Europe routinely to negotiate and manage his contracts, and spoke Spanish; and 3) Newey's contract were large—ranging from $10 to $40 million—and tended to have relatively long lead times and implementation schedules. LES claims that, in contrast, Garey-Jones: 1) was mostly responsible for negotiating and administering contracts for the installation of mechanical, electrical and plumbing systems on construction at LES, and her job did not require the same understanding of the enrichment process or the same knowledge of the installation process that Newey's job required; 2) had one international vendor, her other vendors were fairly available in the domestic market, and most of her time was spent on the day-to-day processing of change orders and purchase orders; and 3) while Garey-Jones negotiated some contracts in the $2 to $5 million range, the majority of her contracts/purchase orders were for less that $2 million.

Garey-Jones disputes that she and Newey did not perform substantially similar work. She claims that she had more responsibilities than Newey because, in addition to being team lead on some of the core contracts, she also handled the installation of mechanical, electrical and plumbing systems for construction projects. She asserts that in 2012 she handled $14 million in contracts for LES, while Newey handled only $6 million. Although LES claims that Newey's job "utilized his foreign language communication skills," (Doc. 42 at 15), it fails to cite to the record

to support this claim. As Garey-Jones points out, Spanish is not the official language for Germany, England or the Netherlands, so LES has failed to demonstrate the relevance that Newey spoke Spanish. Further, LES neglects to adequately summarize pertinent facts on this issue. While LES claims that Garey-Jones had one international vendor, this assertion ignores her testimony that she had vendors in Germany and the United Kingdom. (Doc. 43 Ex. 1 at 1.)

To prevail on summary judgment, LES must prove at least one affirmative defense so clearly that no rational jury could find to the contrary. *Mickelson*, 460 F.3d at 1311. While the reasons proffered by LES could explain the salary disparity between Newey and Garey-Jones, I cannot conclude as a matter of law that they in fact explain the disparity. Thus, LES is not entitled to summary judgment on this claim.

## DISABILITY DISCRIMINATION CLAIM

Garey-Jones claims that LES discriminated against her because it perceived her to be disabled by her Parkinson's Disease. The ADA prohibits employment discrimination on the basis of an employee's disability, and includes within its definition of disability an employee that the employer regards as having a physical or mental impairment. 42 U.S.C. § 12102(3). Because Garey-Jones offers no direct evidence of discrimination, her claim is subject to the burden-shifting framework set forth in *McDonnell Douglas*. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). To establish a prima facie case of disability discrimination under the Act, Garey-Jones must show that (1) LES perceived her to be disabled within the meaning of the ADA; (2) she was qualified for her employment position; and (3) LES discriminated against her because of her perceived disability. *Id*. at 1037-38; *Doebele v. Sprint/United Mgmt. Co*., 342 F.3d 1117, 1128 (10th Cir. 2003).

In order to demonstrate discrimination, a plaintiff generally must show that she has

suffered an adverse employment action because of the disability. *E.E.O.C.*, 644 F.3d at 1038. The Tenth Circuit has liberally defined the phrase "adverse employment action," and examines the unique factors of each case to determine whether the plaintiff has suffered an adverse employment action. *Id*. at 1040. The circuit has repeatedly recognized that only "'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' will rise to the level of an adverse employment action." *Id*. (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006)). A "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotations omitted)).

Garey-Jones claims that, soon after she notified Procurement Director Ken Templeton that she had Parkinson's Disease, Templeton perceived her to be disabled and began discriminating against her because of her perceived disability. Templeton pulled her from both her core and non-core construction contracts and assigned Garey-Jones to a position as a rover to assist other procurement specialists with their work. As a result of this reassignment, according to Garey-Jones, both her job duties and responsibilities were drastically reduced.

As discussed previously, the Procurement Department was reorganized in the fall of 2012, and LES asserts that Garey-Jones's duties were changed in connection with the reorganization. Templeton claims that he made changes to the duties of Garey-Jones and others to balance workloads in the department and to prepare for the Phase III construction project.

Templeton assigned the contracts Garey-Jones was working on to other procurement specialists, and he assigned Garey-Jones to help others in closing out procurement contracts relating to the Cylinder Receipt and Dispatch Building, which was winding down. Paul Newey, Laura Tate and Melissa Pettigrew were designated to be team leads on certain projects. Garey-Jones did not dispute that Steve Phelps had some of his duties and contracts reassigned as a result of the reorganization. (Doc. 42 ¶ 13; Doc. 43 ¶ 13.)  LES asserts that all of the Procurement Specialist IIs kept their same pay, job titles and levels of responsibility in the reorganization, and Garey-Jones does not dispute that she kept the same pay and job title. Thus, the issue is whether the change in Garey-Jones's job duties was significant enough to qualify as an adverse employment action.

Three recent cases from the Supreme Court and the Tenth Circuit analyze when a reassignment of job duties within the same job category constitutes an adverse employment action. In *White*, the Supreme Court affirmed a jury finding that a reassignment of duties within the same job category from forklift operator to track laborer was an adverse employment action that entitled White to recover damages from the Burlington Railroad. 548 U.S. at 70-72. As the Court recognized, "[a]lmost every job category involves some responsibilities and duties that are less desirable than others," and there was considerable evidence that the track laborer duties were more arduous and dirtier than the forklift operator duties. *Id*. In *Daniels*, a dispatcher claimed that UPS discriminated against her based on her sex and age when it assigned her to the night shift, despite the fact that her job classification and salary did not change. 701 F.3d at 635. The circuit held that although dispatchers working different shifts had different duties, the dispatcher did not establish that the duties differed significantly and upheld the summary judgment granted to UPS. *Id*. at 635-36. Finally, in *Haynes*, the circuit held that a reassignment of sales accounts

that affected the plaintiff's earnings and ability to meet her sales quotas was an adverse employment action. 456 F.3d at 1223-24.

This case is most analogous to *Daniels*. Garey-Jones has failed to establish that the change in her duties as a Procurement Specialist II differed significantly enough to qualify as an adverse employment action. It is well-settled that an alteration of job responsibilities does not constitute an adverse employment action. *Stover*, 382 F.3d at 1075. Although Garey-Jones makes the conclusory claim that her job duties and responsibilities were drastically reduced, she fails to provide appropriate details to support this claim, and conclusory allegations without specific supporting facts cannot withstand a motion for summary judgment. *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990).

Assuming that Garey-Jones could show that she suffered an adverse employment action, summary judgment would still be appropriate because LES has offered a legitimate, non-discriminatory reason for the change in her duties, and Garey-Jones has not shown that the reason is pretextual. The reorganization of the Procurement Department necessitated a change in duties for numerous employees, not just for Garey-Jones. Other than an off-hand allegation, buried in an Exhibit to her Response, that in November of 2012 Templeton told Alan Hartley, the Group Global Director of Procurement, that Garey-Jones had Parkinson's Disease, (Doc. 43 Ex. B), Garey-Jones has presented no evidence that her job duties were changed because Templeton perceived her to be disabled. While Garey-Jones is entitled to all reasonable inferences in her favor, the inferences must be more than speculation and conjecture. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007) (quotation omitted). Garey-Jones has not offered facts to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in LES's proffered reason, such that a reasonable fact finder would find the reason to be unworthy

of credence. *Tabor*, 703 F.3d at 1218. Thus, LES is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons set out above, I recommend that LES's motion for summary judgment be granted on Garey-Jones's:

1. Title VII claims for failure to promote;

2. EPA claims for salary discrimination concerning the work performed by Jim Soyars and John Cassata; and

3. ADA claim for disability discrimination.

Further, I recommend that LES's motion for summary judgment be denied on Garey-Jones's:

1. Title VII claims for salary discrimination; and

2. EPA claims for salary discrimination concerning the work performed by Daniel Schlueter, Jim Johns and Paul Newey.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.